# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WAYNE WIGNES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 08 C 5047 |
| v. | ) |
| | ) Judge Ronald A. Guzmán |
| AON CORPORATION | ) |
| EXCESS BENEFIT PLAN, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Wayne Wignes ("Wignes") has brought this action to challenge the Aon Corp. Excess Benefit Plan's denial of his claim for benefits pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). Before this Court are the parties' cross-motions for summary judgment. For the reasons provided in this Memorandum Opinion and Order, the Court grants defendant's motion for summary judgment and denies plaintiff's cross-motion for partial summary judgment.

## Facts[1]

On January 1, 1989, Aon Corp. ("Aon") established the "Aon Corp. Excess Benefit Plan" ("Plan"). (Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 1.) The Plan contains restrictions that may result in a diminution of benefits that are available to some highly compensated employees of Aon. (*Id.* ¶ 2.) The Plan was established to replace benefits that are lost as a result of such diminution to eligible employees. (*Id.* ¶ 3.) Thus, the Plan is intended to be an "unfunded deferred compensation plan for a select group of management or highly compensated employees." (*Id.* ¶ 3.) On November 21, 2003, Aon's Board of Directors enacted the Fifth Amendment to the Plan that provided for the forfeiture of benefits at issue here. (Def.'s LR 56.1(a)(3) Stmt. ¶ 13.)

---
[1] The following facts are undisputed and are taken from the Administrative Record and the parties' Local Rule 56.1 submissions in support of their cross-motions for summary judgment.

On July 11, 1989, Aon hired Wayne Wignes. (*Id.* ¶ 6.) On June 11, 2007, Wignes voluntarily terminated his employment with Aon. (*Id.* ¶ 8.) On November 19, 2007, Greg Case, the Chief Executive Officer of Aon, was asked to determine whether Wignes had breached the Plan's prohibition-on-competition provision. (*Id.* ¶ 15.) Aon received information that Wignes attempted to solicit Aon clients to move to the Jardine Lloyd Thompson Group, PLC ("JLT") and was successful in convincing one client to make such a move. (*Id.* ¶ 16.) Case was told that Wignes had been reminded of obligations under the Plan on his last day of employment and three additional times during the following six weeks. (*Id.* ¶ 17.) Wignes never denied soliciting Aon customers after he terminated his employment with Aon. (*Id.* ¶ 18.)

On February 19, 2008, Aon initially denied Wignes' claim for benefits. (*Id.* ¶ 19.) The denial informed Wignes that Aon had determined that he was directly competing with Aon in violation of the Fifth Amendment to the Plan, which provides for a forfeiture of a member's benefits if that member competes with Aon. (*Id.*) After this initial denial, Wignes requested a review of the decision by the Administrative Committee of the Aon Excess Benefit Plan ("committee") pursuant to Section 6.3(c) of the Plan. (*Id.* ¶ 20.) In his request for review, Wignes acknowledged that he was employed by a competitor. (*Id.* ¶ 21.)

On May 14, 2008, the Administrative Committee of the Aon Excess Benefit Plan informed Wignes that his appeal on the denial of his benefits had been rejected. (*Id.* ¶ 22.) Such a determination was based on Wignes' argument that "the non-compete provision contained in Section 4.5 of the Plan was introduced without mutual consent or specific consideration and is, therefore unenforceable." (*Id.*) The Committee instructed Wignes that he "did not offer for the record on review any support for [such an] argument, and it is the belief of the Committee that

the Federal District Court for the Northern District of Illinois has previously rejected the same argument." (*Id.*) Plaintiff then brought this action under ERISA. (*Id.* ¶ 3.)

**Discussion**

Summary judgment is to be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). "In considering cross-motions for summary judgment, we . . . view all facts and draw all reasonable inferences in a light most favorable to the party against whom the motion under consideration is made." *Gazarkiewicz v. Town of Kingsford Heights*, 359 F.3d 933, 939 (7th Cir. 2004).

### I. Exhaustion

ERISA requires a litigant to first exhaust all of its administrative remedies prior to bringing an action in court with respect to a denial of benefits. *Gallegos v. Mt. Sinai Med. Ctr.*, 210 F.3d 803, 807-08 (7th Cir. 2000). There are a number of functions served by requiring the exhaustion of administrative remedies, including: (1) the ability to "assemble a factual record which will assist a court" in reviewing the decision (2) "to minimize the number of frivolous lawsuits;" (3) to "promote a non-adversarial dispute resolution process;" and (4) to "decrease the cost and time of claims settlement." *Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 649 (7th Cir. 1996). Claims, however, may be waived by a party if they are not presented during prior administrative proceedings. *Id.* The Seventh Circuit has held that administrative remedies are not exhausted with respect to certain claims where plaintiff failed to raise those claims

throughout the entire administrative process. *See Hess v. Reg-Ellen Mach. Tool Corp. Employee Stock Ownership Plan*, 502 F.3d 725, 729 (7th Cir. 2007).

It is clear from the record that Wignes' claim in Count I was raised during the administrative proceedings. During those proceedings, Wignes' counsel argued that "Aon's attempt to unilaterally impose non-compete language in the Aon Excess Benefit Plan, after the fact, is legally untenable." (Letter from Booher to Naar of 7/31/07, at 2.) In response to Wignes' argument that the "non-compete provision in Section 4.5 of the Plan was introduced without mutual consent or specific consideration and is, therefore, unenforceable," Aon informed Wignes that he "did not offer for the record on review any support for this argument." (Letter from Reschke to Wignes of 5/14/08, at 2.) Wignes brings the same claim in Count I of his Complaint and alleges that "[t]he Fifth Amendment to the [Plan] . . . is void and unenforceable as to [Wignes] because the [Plan] constitutes a unilateral contract which created a vested right in [Wignes] by his continuing in employment with Aon Corporation for the requisite number of years." (Compl. ¶ 27.) The Court holds that Wignes has exhausted his administrative remedies with respect to Count I, and thus, the Court may review this claim.

However, Wignes failed to raise the issues alleged in Count II during the administrative proceedings. Count II states that "[t]he Fifth Amendment to the [Plan] . . . specifically provides that a denial of benefits due to business competition shall act as such denial only to benefits which have not yet accrued to the Plan Member." (Compl. ¶ 33.) Wignes alleges that "[u]nder that amendment, only benefits accruing after the adoption of the Fifth Amendment would be subject to a denial or forfeiture as a result of any business competition by the Plan member." (*Id.*) Wignes never presented this theory during the administrative proceedings. Instead, he merely asserted that the "language [of the Fifth Amendment] conflicts with [his] employment

**4**

agreement and was introduced without mutual consent or specific consideration." (Letter from Wignes to Reschke of 3/11/08, at 1.) Because his argument was never presented during the administrative proceedings, he has not exhausted his administrative remedies with respect to Count II and this Court cannot review Wignes' claim set forth in Count II. Thus, the Court grants defendant's motion and denies plaintiff's motion as to Count II.[2]

**II. Merits**

Although Wignes contends that the committee's decision should be reviewed *de novo*, the Court disagrees. While Wignes asserts that all top-hat plans should be reviewed *de novo* rather than under an arbitrary and capricious standard, he fails to cite any binding or persuasive law to support his position.

"In ERISA cases, denials of benefits are reviewed *de novo* unless the plan at issue gives the plan administrator discretion to construe the policy terms." *Wetzler v. Ill. CPA Soc'y & Found. Retirement Income Plan*, 586 F.3d 1053, 1057 (7th Cir. 2009). "Where a plan administrator is given discretion to interpret the provisions of the plan, the administrator's decisions are reviewed using the arbitrary and capricious standard." *Id.* "Under that standard, an administrator's interpretation is given great deference and will not be disturbed if it is based on a reasonable interpretation of the plan's language." *Id.* Moreover, under the arbitrary and capricious standard, the court will uphold an administrator's determination unless it is "downright unreasonable." *Tegtmeier v. Midwest Operating Eng'rs Pension Trust Fund*, 390

---

[2] Even if the Court were to hold that plaintiff had exhausted his administrative remedies as to the issues raised in Count II, which it does not, it would still have granted defendant's motion and denied plaintiff's motion for summary judgment as to Count II. As discussed in this Memorandum Opinion and Order, plaintiff had not accrued any benefits before his voluntary termination in 2007 because he was not a member under the Plan until he turned fifty and was entitled to receive payment of benefits in the given calendar year. Moreover, the Fifth Amendment explicitly provides that a member's right to receive any benefits under the Plan shall be forfeited if the member engages in competitive behavior. (Def.'s LR 56.1(a)(3) Stmt. ¶ 13.) Therefore, plaintiff would not have been entitled to benefits.

F.3d 1040, 1045 (7th Cir. 2004). "If the administrator made an informed judgment and articulates an explanation for it that is satisfactory in light of the relevant facts, then that decision is final." *Id.*

Looking to the language of the Plan, it explicitly states that "[t]he committee shall have complete discretion as to whether a claim shall be allowed or denied. The committee's decision in this regard shall be final." (Def.'s LR 56.1(a)(3) Stmt. ¶ 14.) The language of the Plan clearly and unambiguously gives the committee discretion with respect to all claims under the Plan. Thus, this Court must review the committee's decision under the arbitrary and capricious standard.

Wignes argues that he is entitled to payment of benefits under the Plan pursuant to Article IV. Wignes contends that the "Plan constitutes a unilateral contract which created a vested right." (Compl. ¶ 27.) Wignes, however, bases his contention on the misguided theories of mutual consent and contract principles.

First, Wignes contends that the Fifth Amendment to the Plan, including the prohibition against competition, is unenforceable because his consent was "neither sought nor obtained" pursuant to Article VII of the Plan. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 4.) However, Wignes' consent was not required to amend the Plan to include the prohibition-on-competition provision. Article VII of the Plan provides that Aon's Board of Directors reserves the right to amend the Plan, "but without the written consent of each *Member* as to his benefit hereunder, no such action may reduce or relieve Aon Corporation or any subsidiary of any obligation with respect to any benefit accrued under the [Plan] by such member as of the date of such amendment or termination." (Def.'s LR 56.1(a)(3) Stmt. ¶ 12.) (emphasis added). When the Aon Board of

Directors amended the Plan to include the Fifth Amendment, Wignes was not a "Member" under the Plan, as defined by the Plan itself.

The Plan provides that a "Member" is "a person who accrues a benefit under this excess benefit plan as provided in Section 3." (*Id.* ¶ 9.) Section 3 of the Plan states that "[a]n employee who attains the age of 50 shall participate in this excess benefit plan with respect to a calendar year if the employee is or was a participant in the Plan, and a benefit becomes payable in such calendar year under Section 4.1 to that employee." (*Id.* ¶ 10.) The Plan, specifically Section 4.1, clearly states that benefits will be paid pursuant to Article V, which provides that "benefits payable under [the Plan] shall be paid . . . [a]fter the termination, retirement or death of a participant." (*Id.* ¶ 11.)

Wignes did not attain the age of fifty until May 4, 2006. (Def.'s LR 56.1(a)(3) Stmt. ¶ 7.) Additionally, under Section 4.1, plaintiff was not entitled to payment of any benefits until plaintiff's termination in 2007. (*Id.* ¶ 11.) The Plan language unambiguously provides that plaintiff was not a "Member" under the Plan at the time of the enactment of the Fifth Amendment on November 21, 2003. Therefore, his consent was not required to amend the Plan.

Second, Wignes contends that the fundamental principles of contract law would be violated if defendant were allowed to reduce or terminate Wignes' benefits under the Plan. Wignes correctly asserts that the Plan is a top-hat plan, which is subject to ERISA enforcement as a unilateral contract. In fact, the Court, in its April 9, 2009 Order, held that the Plan is subject to enforcement as a unilateral contract. However, Wignes misapplies the fundamental principles of a unilateral contract in arguing that he is entitled to benefits under the Plan.

A plaintiff must comply with the prerequisites of a top-hat plan in order to accept an offer to create a unilateral contract. *Koenig v. Waste Mgmt., Inc.*, 76 F. Supp. 2d 908, 914 (N.D.

**7**

Ill. 1999). A vested right is only created in those who fulfill the plan's requirements. *Id.* As already discussed, Wignes was not even eligible as a "Member" of the Plan until he attained the age of fifty and was entitled to receive payment in that calendar year under Section 4.1. (Def.'s LR 56.1(a)(3) Stmt. ¶¶ 7, 10-11.) Wignes did not meet these requirements and was thus not eligible under the Plan. Therefore, there was no unilateral contract to offer or accept until the plaintiff met the eligibility requirements under the Plan. At the time Wignes became eligible under the Plan, the prohibition-on-competition provision was already enacted and a part of the Plan. Thus, any acceptance of a unilateral contract made by the plaintiff when he was eligible would have subjected him to the prohibition-on-competition clause.

Furthermore, Wignes' argument that the Fifth Amendment was imposed without consideration and is thus unenforceable is a nonstarter. Plaintiff was an at-will employee of Aon. His employment agreement specifically stated, "[t]his agreement may be terminated by the Company or the Employee without cause." (Employment Agreement, R. at APP040.) "When an employment agreement is terminable at will, it may be modified by the employer as a condition of its continuance." *Hay Group, Inc. v. Bassick*, No. 02 C 8194, 2005 WL 2420415, at 17 (N.D. Ill. Sept. 29, 2005) (citations omitted). "When an at-will employee continues to work after a change in [his benefits] plan, he is deemed to have accepted the change." *Id.* (citations omitted). Wignes continued to work for Aon until June 2007, roughly four years after the Plan was amended to include the Fifth Amendment. (Def.'s LR 56.1(a)(3) Stmt. ¶¶ 8, 13.) He therefore accepted the amendment to the Plan by continuing to work for Aon. He was free to terminate his employment at any time, but instead he chose to remain an employee. Thus, the Court holds that there was consideration for the top-hat plan.

Wignes never contends that the committee's decision was "downright unreasonable." Rather, he merely asserts that this Court must review its decision under a *de novo* standard and no deference should be given to the committee's decision. There is nothing before this Court that suggests that the committee's decision was based on an unreasonable interpretation of the Plan's language. The committee had the discretion to consider Wignes' request for benefits, and it articulated its reasons for the denial.

The Court holds that the committee made an informed judgment in light of the relevant facts. The Plan explicitly provides that "[a] Member's right to receive any payments under the [Plan], including any remaining payments if distribution . . . has commenced . . . shall be forfeited" if that person "during or after employment, in the sole judgment of the Chief Executive Officer of the Company, after a reasonable investigation, breached any of the following provisions." (Def.'s LR 56.1(a)(3) Stmt. ¶ 13.) Those provisions include the prohibition on competition, which expressly calls for the forfeiture of benefits. (*Id.*) Plaintiff did not deny that he engaged in competitive activity after his termination, and in fact, he admitted that he was employed by a competitor. (*Id.* ¶¶ 18, 21.) In sum, the Court holds that the committee's denial of plaintiff's request for benefits was not arbitrary or capricious.

## Conclusion

The Court grants defendant's motion for summary judgment [doc. no. 35] and denies plaintiff's motion for partial summary judgment [doc. no. 39]. This case is hereby terminated.

**SO ORDERED.**          **ENTERED:**

**March 19, 2010**

*Ronald A. Guzman*
**HON. RONALD A. GUZMAN**
**United States District Judge**